# EXHIBIT B

# McDermott
# Will & Emery

Boston Brussels Chicago Düsseldorf Houston London Los Angeles Miami Munich
New York Orange County Rome San Diego Silicon Valley Washington, D.C.

Strategic alliance with MWE China Law Offices (Shanghai)

Joel E. Cohen
Attorney at Law
jcohen@mwe.com
212.547.5566

April 22, 2008

**VIA HAND**

The Honorable Magistrate Judge Ronald L. Ellis
United States Magistrate Judge
United States Courthouse
500 Pearl Street, Room 1970
New York, New York 10007

Re:   Chen *et al.* v. Republic Restaurant Corp. *et al.*
      Index No. 07-Civ-3307(LTS)(RLE)

Dear Judge Ellis:

This firm represents the Defendants in the above-referenced matter. We write this letter to request that the Court reconsider its March 26, 2008 ruling that denied Defendants' request for Plaintiffs' individual tax returns. During depositions, Plaintiffs have invoked their Fifth Amendment right with respect to questions concerning their tax returns, which has prevented Defendants from establishing a defense of *in pari delicto*. Under this defense, Plaintiffs' recovery would be limited by the fact that both Plaintiffs and Defendants had a hand in the improper pay practices that are at issue in this case. See Granite Partners, L.P. v. Bear, Stearns & Co., Inc., 17 F. Supp. 2d 275, 308 (S.D.N.Y. 1998)(barring recovery for breach of fiduciary duty claim under *in pari delicto* due to "equal fault" of parties). In ascertaining the circumstances as to how the pay practices at issue came to be, we have learned that the practice of paying a set "low salary" was in fact suggested by most of the Plaintiffs.

Defendants maintain that they paid Plaintiffs a set salary at the Plaintiffs' request so that Plaintiffs could retain a low "on the books" income to take advantage of federal "earned income tax credits." During depositions, at least two Plaintiffs testified that they received a federal "earned income tax credit" from the government because their incomes were reported on their tax returns to be below a certain threshold. See, e.g., Deposition ("Dep.") of Cong Dian Zheng at 53; Dep. of Jin Long Dong at 7. (Attached hereto as Exhibit A are the cited pages from the Depositions of Cong Dian Zheng and Jin Long Dong). By way of context, delivery workers earn most of their wages through cash tips, much of which they do not declare on their income tax returns. Thus, the employees seek to have their "on the book" wages minimized so that they will then appear to earn less than they actually do because of their unreported tips, thereby qualifying them for the tax credit (which, frankly, is worth more than the additional hourly wages they give up by having a set "salary").

U.S. practice conducted through McDermott Will & Emery LLP.
340 Madison Avenue  New York, New York  10173-1922  Telephone: 212.547.5400  Facsimile: 212.547.5444  www.mwe.com

The Honorable Magistrate Ronald L. Ellis
April 22, 2008
Page 2

Defendants maintain that Plaintiffs had a major role in the wrongdoing at issue in this case by requesting that Defendants pay them in a manner that would benefit them in their tax recovery. "Plaintiffs who are truly *in pari delicto* are those who have themselves violated the law in cooperation with the defendant." Granite Partners, L.P., 17 F. Supp. 2d at 308. Accordingly, Defendants maintain that Plaintiffs should not be able to recover liquidated damages under the Fair Labor Standards Act because of Plaintiffs' complicity in the Restaurant's admittedly improper pay practices (which ultimately allowed them to benefit from federal tax credits). See Thornton *et al.* v. Baron *et al.*, 4 A.D.3d 258, 264, 772 N.Y.S.2d 326, 331 (1st Dep't 2004)("By allowing [plaintiff] to benefit in part from his scheme to circumvent the [applicable law], th[e] purpose [of the law] will be undermined . . . and rendered meaningless."); 390 West End Ave. Assocs. v. Youngstein *et al.*, 221 A.D.2d 292, 294, 634 N.Y.S.2d 112, 114 (1st Dep't 1995)(barring affirmative relief to plaintiff landlord against defendant tenant because of "plaintiff's status as a wrongdoer" in trying to evade applicable law). Plaintiffs' participation in the Restaurant's unlawful pay practices for their own benefit must not be overlooked by the Court in deciding the issue of liquidated damages, which is an equitable remedy. See Reich v. Diamond D. Trailer Mfg., Inc., No. 93-4197-SAC, 1993 U.S. Dist. LEXIS 18580, at *2 (Dist. Kan. Dec. 22, 1993)(stating liquidated damages constitute equitable relief).

Accordingly, as Plaintiffs' tax returns would clearly lead to the discovery of admissible evidence to support an *in pari delicto* defense, Defendants request that this Court reconsider its prior ruling concerning the discoverability of Plaintiffs' tax returns. In the alternative, if the Court upholds its prior ruling, Defendants request that this Court consider barring Plaintiffs' right to liquidated damages pursuant to the *in pari delicto* doctrine.

Respectfully submitted,

Joel E. Cohen

Enclosure

cc: William Miller, Esq. (*via email*)
    Kenneth Kimerling, Esq. (*via email*)

NYK 1156933-1.079795.0011

# EXHIBIT A

Cong Dian Zheng
March 11, 2008

### Page 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------x
FEN Z. CHEN, JIN L. DONG, DE Q. LIAN,
DIAN LIN, GONG Y. WANG, ZHUK YONG,
JIN D. YOU and CONG D. ZHENG,
   Plaintiffs,
   -against-          07 CV 03307
                      (LTS) (RLE)

REPUBLIC RESTAURANT CORP., REPUBLIC
GC, LLC, ME'KONG DELTA, INC., HUY CHI
LE, LINH HUE LE and LIANG JIN LIN,

   Defendants.
----------------------------------x
               March 11, 2008
               9:55 A.M.

   Deposition of Plaintiff, by CONG DIAN ZHENG, taken by Defendants, pursuant to Notice, at the offices of McDermott Will & Emery LLP, 340 Madison Avenue, New York, New York 10017-4613, before Charisse Romeo, a Shorthand Reporter and Notary Public within and for the State of New York.

### Page 2

```
APPEARANCES:
   DAVIS POLK WARDWELL
      Attorneys for Plaintiffs
      450 Lexington Avenue
      New York, New York 10017

   BY: JONATHAN L. ADLER, ESQ.
       WILLIAM C. MILLER, ESQ.

   McDERMOTT WILL & EMERY LLP
      Attorneys for Defendants
      340 Madison Avenue
      New York, New York 10017-4613
   BY: JOEL E. COHEN, ESQ.
       LESLIE NEW, ESQ.

ALSO PRESENT:

   JIN LONG DONG

   DE QING LIAN

   GONG YI WANG

   HUY CHI LE

   CHOAKE LIU - Chinese Interpreter

   JERRY WENG - Volunteer Translator
```

### Page 3

    IT IS HEREBY STIPULATED AND AGREED by
and between the attorneys for the respective
parties herein that the sealing, filing and
certification of the within deposition be waived;
that such deposition may be signed and sworn to
before any officer authorized to administer an
oath, with the same force and effect as if signed
and sworn to before a judge of this court.
    IT IS FURTHER STIPULATED AND AGREED
that all objections, except as to the form, are
reserved to the time of the trial.

### Page 4

1          C. Zheng
2   CHOAKE LIU,
3       called as the official interpreter in
4       this matter, was duly sworn by the
5       Notary Public (Charisse Romeo) to
6       translate accurately and faithfully the
7       questions propounded to the witness
8       from English into Chinese and the
9       answers given by the witness from
10      Chinese into English.
11  CONG DIAN ZHENG,
12      having been first duly sworn through
13      the interpreter by the Notary Public
14      (Charisse Romeo), was examined and
15      testified as follows:
16  EXAMINATION BY MR. COHEN:
17      Q.  Would you state your name for the
18  record?
19      A.  Cong Dian Zheng.
20      Q.  What is your address?
21      A.  633 62nd Street, Brooklyn, New
22  York 11220.
23      Q.  My name is Joel Cohen and I
24  represent the defendants and I'm going to be
25  asking you some questions about the lawsuit.

Cong Dian Zheng
March 11, 2008

Page 53

1        C. Zheng
2    Q.  Again if you can answer the
3  question I asked you, how long have you been
4  getting money back from the government because
5  you earn a low amount of money?
6    A.  That I don't remember. All I can
7  remember is back -- was about two or three
8  years back. Other times, I don't remember.
9    Q.  Okay. And you're telling me that
10  no one has ever told you that if you make less
11  than a certain amount of money, the government
12  pays you money?
13      MR. ADLER:  Object to form.
14    A.  No.
15    Q.  And no one has told you that you
16  need to keep your earning levels below a
17  certain amount officially, so that you could
18  get money back from the government?
19    A.  No.
20    Q.  No? Okay.
21      When did you start having sign-in
22  sheets?
23    A.  I don't, I don't understand what
24  you are talking about. What do you mean by
25  "sign-in sheets"?

Page 54

1        C. Zheng
2    Q.  Are there now sign-in sheets that
3  identify what your hours are?
4    A.  Yes. Yes, there is a sign-in
5  sheet.
6    Q.  Sign-in sheet?
7    A.  Yes, for us to sign every time we
8  come to work.
9    Q.  When did that start?
10    A.  The same, it started July of the
11  year 2007. Yes, it was about July or May of
12  the year 2007. It seemed that it was either
13  in May or in July of the year 2007.
14    Q.  Okay.
15    A.  That this sign-in sheet got into
16  effect.
17    Q.  Okay. Well, let me ask you, are
18  the sign-in sheets accurate?
19    A.  Yes, since it is reported every
20  time, it is accurate.
21    Q.  And is it your testimony that at
22  the time the sign-in sheets began to be used,
23  that that is when the restaurant stopped the
24  practice of delivery people going out and
25  handing out menus in the afternoon?

Page 55

1        C. Zheng
2    A.  That's correct.
3    Q.  Okay.
4      MR. COHEN:  Can I have two
5  minutes. Let's go outside.
6      (Attorneys for defendants and Mr.
7  Le left EBT room from 11:49 A.M.until
8  11:55 A.M.)
9      MR. COHEN:  Subject to potential
10  re-call regarding the tax questions, I
11  have nothing further of this witness.
12      Do you have any questions?
13      MR. ADLER:  No, we don't have any
14  questions.
15
16    (Time noted: 11:55 A.M.)
17    _____
18    Cong Dian Zheng
19
20  Subscribed and sworn to
21  before me this_____day
22  of_____2008.
23  _____

Page 56

CERTIFICATE
----------

STATE OF NEW YORK )
             ) ss.:
COUNTY OF NEW YORK )

    I, CHARISSE ROMEO, a Shorthand Reporter and Notary Public within and for the State of New York, do hereby certify:

    That I reported the proceedings in the within-entitled matter, and that the within transcript is a true record of such proceedings.

    I further certify that I am not related, by blood or marriage, to any of the parties in this matter and that I am in no way interested in the outcome of this matter.

    IN WITNESS WHEREOF, I have hereunto set my hand this __20th____ day of __March__,
2008.

    _____
    CHARISSE ROMEO

14 (Pages 53 to 56)

Jin Long Dong
March 11, 2008

Page 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------x
FEN Z. CHEN, JIN L. DONG, DE Q. LIAN,
DIAN LIN, GONG Y. WANG, ZHUK YONG,
JIN D. YOU and CONG D. ZHENG,
      Plaintiffs,
  -against-     07 CV 03307
                (LTS) (RLE)

REPUBLIC RESTAURANT CORP., REPUBLIC
GC, LLC, ME'KONG DELTA, INC., HUY CHI
LE, LINH HUE LE and LIANG JIN LIN,

      Defendants.
-------------------------------x
      March 11, 2008
      11:56 A.M.

    Deposition of Plaintiff, by JIN
LONG DONG, taken by Defendants, pursuant to
Notice, at the offices of McDermott Will &
Emery LLP, 340 Madison Avenue, New York, New
York 10017-4613, before Charisse Romeo, a
Shorthand Reporter and Notary Public within
and for the State of New York.

Page 2

APPEARANCES:
  DAVIS POLK WARDWELL
    Attorneys for Plaintiffs
    450 Lexington Avenue
    New York, New York 10017

  BY: JONATHAN L. ADLER, ESQ.
     WILLIAM C. MILLER, ESQ.

  McDERMOTT WILL & EMERY LLP
    Attorneys for Defendants
    340 Madison Avenue
    New York, New York 10017-4613
  BY: JOEL E. COHEN, ESQ.
     LESLIE NEW, ESQ.

ALSO PRESENT:

  DE QING LIAN

  GONG YI WANG

  HUY CHI LE

  CHOAKE LIU - Chinese Interpreter

  JERRY WENG - Volunteer Translator

Page 3

2     IT IS HEREBY STIPULATED AND AGREED by
3 and between the attorneys for the respective
4 parties herein that the sealing, filing and
5 certification of the within deposition be waived;
6 that such deposition may be signed and sworn to
7 before any officer authorized to administer an
8 oath, with the same force and effect as if signed
9 and sworn to before a judge of this court.
10    IT IS FURTHER STIPULATED AND AGREED
11 that all objections, except as to the form, are
12 reserved to the time of the trial.

Page 4

1     J. Dong
2  CHOAKE LIU,
3    called as the official interpreter in
4    this matter, was duly sworn by the
5    Notary Public (Charisse Romeo) to
6    translate accurately and faithfully the
7    questions propounded to the witness
8    from English into Chinese and the
9    answers given by the witness from
10   Chinese into English.
11  JING LONG DONG,
12    having been first duly sworn through
13    the interpreter by the Notary Public
14    (Charisse Romeo), was examined and
15    testified as follows:
16  EXAMINATION BY MR. COHEN:
17   Q.  Would you state your name for the
18 record?
19   A.  Jin Long Dong.
20   Q.  What is your address?
21   A.  317 Worth Street, Brooklyn, New
22 York 11232.
23   Q.  Mr. Dong; is that right?
24   A.  Yes.
25   Q.  Did you hear the introduction I

1 (Pages 1 to 4)

Jin Long Dong
March 11, 2008

Page 5

1           J. Dong
2   made to Mr. Zheng before?
3       A.   Yes.
4       Q.   So the same rules apply, okay?
5       A.   Okay.
6       Q.   How long have you been working in
7   the United States?
8       A.   I came to the United States in
9   December 1987.
10      Q.   And when did you start working
11  for Republic?
12      A.   It was back in May or June of the
13  year 2000.
14      Q.   Okay. Did you work for anyone
15  before Republic Restaurant?
16      A.   Yes.
17      Q.   Who did you work for?
18      A.   I worked at the restaurant
19  located at 74th Street and Second Avenue.
20      Q.   You don't remember the name of
21  that restaurant?
22      A.   Well, it starts with the letter H
23  and I don't remember the rest of the spelling.
24      Q.   Do you know, is that restaurant
25  still around?

Page 6

1           J. Dong
2       A.   It seemed that it is out of
3   business.
4       Q.   It is out of business?
5       A.   Yes.
6       Q.   When you worked for that
7   restaurant, were you paid in cash or by check?
8       A.   Cash.
9       Q.   When you went to work for
10  Republic, were you paid by cash or by check?
11      A.   Part, part of the salary is in
12  check and part of the salary is in cash.
13      Q.   Since you have been working at
14  Republic, have you paid taxes?
15      A.   Oh, yes and my employer give me
16  W-2 form and then I file the income tax
17  report.
18      Q.   And did you do your taxes
19  yourself or do you have someone help you?
20      A.   Yes, my accountant helped me to
21  file tax report.
22      Q.   And who is your accountant?
23      A.   Okay the name, the name of my
24  accounting firm is Jian Hua accounting firm,
25  J-I-A-N, H-U-A.

Page 7

1           J. Dong
2       Q.   Have you got money back from the
3   government because your income is below a
4   certain level?
5       A.   Whatever amount my accountant
6   told me to file the report, I just followed.
7       Q.   Okay. But my question is, do you
8   get money back from the government because
9   your income is too low?
10      A.   Yes.
11      Q.   And did your accountant ever
12  explain to you that you get money back from
13  the government if your reported income is
14  below a certain level?
15      A.   No.
16      Q.   No?
17           And in terms of since you worked
18  for Republic Restaurant, do you make more
19  money from what Republic pays you or do you
20  make more money from tips?
21      A.   Yes, more in check.
22      Q.   More in check than in tips?
23      A.   For example, if my salary is
24  $300 --
25      Q.   Yes.

Page 8

1           J. Dong
2       A.   -- and then 280 would be in check
3   and then the remaining $20 would be in cash.
4       Q.   That's not the question that I am
5   asking you. If you could listen to the
6   question I am asking you, Mr. Dong.
7       A.   Okay.
8       Q.   The question I'm asking is, do
9   you get more money from tips or from what you
10  are paid by the restaurant?
11      A.   Okay, I got the check from the
12  employer.
13      Q.   Do you make tips?
14      A.   Yes.
15      Q.   Okay. Do the tips come from the
16  employer?
17      A.   From the customers.
18      Q.   From the customers?
19      A.   Yes.
20      Q.   Do you make a certain amount of
21  money every year from tips?
22      A.   That I don't -- I don't
23  calculate.
24      Q.   You don't calculate. Do you keep
25  a record of how much you make in tips?

2 (Pages 5 to 8)

212-268-2590   CLASSIC REPORTING, INC.   ClassicReporting@aol.com