# EXHIBIT F

# McDermott Will & Emery

Boston Brussels Chicago Düsseldorf Houston London Los Angeles Miami Munich
New York Orange County Rome San Diego Silicon Valley Washington, D.C.

Strategic alliance with MWE China Law Offices (Shanghai)

Joel E. Cohen
Attorney at Law
jcohen@mwe.com
212.547.5566

May 1, 2008

**VIA HAND**

The Honorable Judge Ronald L. Ellis
United States Magistrate Judge
United States District Court
Southern District of New York
500 Pearl Street, Room 1970
New York, New York 10007

Re:  Chen *et al.* v. Republic Restaurant Corp. *et al.*
     Index No. 07-Civ-3307

Dear Judge Ellis:

As you know, we represent the Defendants in the above-referenced matter. This letter responds to the April 29, 2008 letter submitted to Your Honor by Plaintiffs' counsel Edwin Sherwin. In light of Mr. Sherwin's letter, we think it important to give context to our intent to seek Plaintiffs' tax returns and to our seeking additional information from the Chinese Staff & Workers' Association ("CSWA"). Contrary to Mr. Sherwin's assertion, both of these issues materialized during the course of discovery.

We have discovered evidence that CSWA, despite not being named in the Amended Complaint, is in fact the driving force behind this lawsuit. By way of background, CSWA is a political organization that exerts great influence over the Chinese immigrant community in New York. Its interests are varied and relate not only to "workers' rights" in the restaurant, garment and other industries, but to issues such as real estate development and governmental programs. Its own publicly-available literature describes one of its guiding principles as fighting the alleged racial bias of the United States government and the government's alleged bias against the "poor."

To help support itself, the CSWA has instigated many lawsuits against businesses, ostensibly brought by employees. As part of organizing employees for purposes of a lawsuit, CSWA chooses counsel for the plaintiffs in these cases, acts as their advisors, translators and/or interpreters, and then takes a percentage of any recovery in the lawsuit as a "donation." In fact, the Plaintiffs in the instant case have testified that the CSWA was intimately involved in encouraging them to bring this lawsuit and instigated them to sign a written agreement. Notably, none of the Plaintiffs had a copy of the agreement itself. After initially denying the existence of such an agreement, the agreement was provided last week to Defendants by CSWA pursuant to a

The Honorable Judge Ronald L. Ellis
May 1, 2008
Page 2

subpoena *duces tecum*. That agreement strongly suggests a commitment to have counsel, who was chosen for Plaintiffs by CSWA, give a total of 30% of Plaintiffs' recovery to the CSWA. The long and short of Defendants' position is that CSWA is the real Plaintiff in this case and has a strong financial stake in its outcome, so it has encouraged the named Plaintiffs to exaggerate their claims for their mutual financial benefit.

It is for that reason that Defendants wish to get answers from CSWA regarding (i) its involvement in this case, (ii) its role in getting the Plaintiffs' agreement to share the proceeds of the lawsuit with the CSWA, (iii) its political interests that motivate its actions and (iv) its interactions with Plaintiffs in this case. Josephine Lee, whom Plaintiffs identified as being their main contact at CSWA, was deposed by Defendants on April 25, 2008, and she claimed to have limited knowledge about these subjects, which is why Defendants seek an extension on discovery to obtain further information on the aforementioned topics.

As to Plaintiffs' tax returns, we believe the evidence will establish the following facts. In the restaurant industry, many low-level, unskilled employees are recent immigrants. Many of these employees receive government assistance in a variety of forms, such as subsidized housing and income tax credits. In order to receive such governmental subsidies, employees can only report earnings below a certain amount. For restaurant employees who work primarily for tips, most of which are paid in cash, the "wages" they receive are of little consequence and if they do receive wages, they prefer the wages to be in cash "off the books," or a low-set amount so as to not jeopardize their receipt of government subsidies. Zong Rong Zhu, the former head delivery person at Republic, has estimated at his deposition that when he left Republic in 1999, most delivery persons were taking home approximately $3,000 per month, most of which was based on cash tips. We assume that this amount has increased over the past eight years. We believe it is safe to assume that the Plaintiffs do not declare most of their tips as income and that they keep the "on the books" income low, so as to obtain the income tax credit, and their tax returns will show that.

We week to prove that this is exactly what happened at Republic Restaurant. To the degree Republic previously paid delivery persons a set salary and some cash, this payment scheme was primarily for the benefit of the employees (and at their behest), and was not done to benefit the Restaurant. The financial gain to the Restaurant from this system was minimal given the tax benefits the Restaurant would get if it paid employees hourly and completely "on the books." Indeed, since Republic started fully complying with the requirements of the Fair Labor Standards Act ("FLSA") last year, it has trouble retaining delivery persons and attracting new delivery persons because of the new pay scheme. Because the Restaurant now officially reports "higher wages," this jeopardizes the employees' abilities to obtain government subsidies. While organizations like the CSWA like to characterize this long-existing, industry-wide system as "exploitation" of immigrant workers, actually the truth is more complex. These unskilled immigrant workers actually encourage this system to earn "off the books" wages, and report wages that are low enough to allow them to keep receiving valuable government subsidies. As

The Honorable Judge Ronald L. Ellis
May 1, 2008
Page 3

was established during at least one deposition, immigrant employees quickly learn from the immigrant community how to take advantage of government benefits such as income tax credits.

CSWA is well-aware of how the restaurant industry really operates and it knows that by bringing FLSA lawsuits, it is in essence picking low-hanging fruit. CSWA instigates these lawsuits by promising immigrant workers large recoveries, getting commitments from plaintiffs to "donate" a percentage of their recovery and controlling plaintiffs' hand-picked counsel. After the lawsuit is over, the CSWA then leaves the restaurant and the employees to deal with the aftermath of the new lawful pay system, where employees then claim that they are not making enough money "on the books" to make up for the loss of the income tax credit and other government subsidies they were previously earning with their lower "on the book" wages. The Plaintiffs' tax returns are a necessity in proving this, as they will show the income tax credit earnings at issue in this case, and would provide corroboration to managements' witnesses who will testify that the "old pay system" was actually sought out by the employees for their own financial reasons.

As an alternative to Plaintiffs' production of their tax returns, Defendants would be amenable to Plaintiffs providing sworn, signed affidavits which disclose the amounts they disclosed as income on their tax returns for the years 2001 to 2007, and the amounts they received in income tax credits for those years as a result of their reported wages.

Again, we emphasize the fact that Defendants have already admitted that they violated the FLSA until early 2007. Defendants have also admitted that they are legally responsible for certain wages up until that time and, in fact, have already made an offer of judgment of several hundreds of thousands of dollars which was rejected by Plaintiffs. However, given the circumstances, Defendants do not feel that they should have to pay liquidated damages to Plaintiffs, who were largely responsible for the system they now protest, and to CSWA, which will get approximately 30% of Plaintiffs' recovery.

Finally, we have no objection to Plaintiffs' request to adjourn the previously-scheduled May 8th conference until after the close of discovery in the event that this Court grants Defendants' request for a one-month extension on discovery for the aforementioned issues.

Respectfully submitted,

Joel E. Cohen

cc: William Miller, Esq.
    Ken Kimerling, Esq.

NYK 1158337-1.079795.0011