# EXHIBIT H

# McDermott
# Will&Emery

Boston Brussels Chicago Düsseldorf Houston London Los Angeles Miami Munich
New York Orange County Rome San Diego Silicon Valley Washington, D.C.

Strategic alliance with MWE China Law Offices (Shanghai)

Terri L. Chase
Attorney at Law
tchase@mwe.com
212.547.5360

May 16, 2008

**VIA HAND**

The Honorable Judge Ronald L. Ellis
United States Magistrate Judge
United States District Court
Southern District of New York
500 Pearl Street, Room 1970
New York, New York 10007

Re:    Chen *et al.* v. Republic Restaurant Corp. *et al.*
       Index No. 07-Civ-3307

Dear Judge Ellis:

This firm represents the Defendants in the above-referenced matter.  We submit this letter in response to Plaintiffs' letter of May 13, 2008, which Plaintiffs submitted to provide the Court with further information concerning the federal Earned Income Tax Credit ("EITC") and to further object to the production of their tax returns.  As explained in greater detail below, Defendants have identified several compelling reasons for the production of information contained in Plaintiffs' tax returns, such that this Court should order the production of Plaintiffs' tax returns.

As an initial matter, on May 15, 2008, Defendant Republic Restaurant received by Certified Mail two letters dated May 13, 2008 from Plaintiff Dian Lin and Plaintiff Jin Dong You, which letters are both written *in English*,[1] and request that the Restaurant provide them with revised W-2 forms from 2005 through 2007 "to reflect the correct income during the time [they] worked at Me'Kong Delta Inc." (Attached hereto as Exhibit A are true and correct copies of the letters and the certified mail envelopes).  Curiously, Plaintiffs must have known the wages identified on their 2005, 2006 and 2007 W-2s for years because Plaintiffs submitted tax returns for those years attesting to the accuracy of their reported earnings.  Yet, until this week's discovery dispute regarding tax returns, Plaintiffs never reported any problems to the restaurant regarding the contents of their W-2s.  Plainly, the timing of Plaintiffs' requests for adjustments to their W-2s creates questions about the veracity of their tax returns and demonstrates the need for the tax

---

[1] Significantly, these form letters are written in English, despite the fact that both Plaintiffs used interpreters at their depositions.  Specifically, Dian Lin admitted at his deposition that he could not read or speak English.  See Deposition ("Dep.") of Dian Lin 6:20 – 7:7.  This contradiction seriously calls into question the veracity of their testimony overall.

The Honorable Judge Ronald L. Ellis
May 16, 2008
Page 2

returns not only to explore the EITC issues, but also to explore the credibility of the Plaintiffs. Accordingly, this Court should compel production of Plaintiffs' tax returns based on these newly-acquired admissions alone.

As Your Honor observed at the settlement conference held on May 8, 2008 (the "Conference"), if Defendants' position that Plaintiffs not only requested but actually helped design the restaurant's unlawful payment practice is true, and that payment practice forms the basis of Plaintiffs' Amended Complaint, this participation may have bearing on Plaintiffs' ability to obtain liquidated damages in this action. Under the Fair Labor Standards Act ("FLSA"), liquidated damages, which are an equitable remedy,[2] may be awarded at the discretion of the district court. See discussion infra. If the tax returns indicate that Plaintiffs received the EITC,[3] that evidence would corroborate Defendants' theory that Plaintiffs' requested and designed the restaurant's unlawful pay practice to artificially lower their earnings so that they would be eligible for the EITC and other benefits, which would support an in pari delicto defense to this equitable relief.

Next, Plaintiffs assert that the restaurant's W-2s and Plaintiffs' deposition testimony gave Defendants all of the necessary information to prove whether or not Plaintiffs earned the EITC. This assertion is wrong for two reasons. First, Defendants cannot ascertain from the W-2s (i) whether Plaintiffs received an EITC from the government and (ii) if so, the value of the EITC received by Plaintiffs. Further, receipt of the EITC is based on reported household income,[4] so the restaurant's W-2s, which do not include spousal earnings, only provide a small piece of the larger household income used to qualify for the EITC and other benefits.[5]

Moreover, Plaintiffs' depositions were not helpful in ascertaining whether or not Plaintiffs received the EITC and the value of that credit. Indeed, seven out of the eight Plaintiffs testified that they did not know any of the details of their tax returns because their accountants were responsible for filing them. See Dep. of Dian Lin 8:2-11; Dep. of Jin Long Dong 6:13-25, 9:5-11; Dep. of Cong Dian Zheng 51:15 – 52:11; Dep. of De Qiang Lian 29:25 – 31:7; Dep. of Gong Yi Wang 9:9-15; Dep. of Fen Z. Chen 10:7-13, 21:24 – 22:6; Dep. of Zhu Kang Yang 8:20 – 9:9. (Attached hereto as Exhibit B are true and correct copies of Plaintiffs' deposition excerpts cited herein). Thus, Plaintiffs had no personal knowledge to testify to this information. In addition, because all of the Plaintiffs relied on interpreters at their depositions, and terms of art such as the "EITC" are not easily interpreted into Chinese, it is unclear whether Plaintiffs understood the

---

[2] Plaintiffs state that liquidated damages are a compensatory remedy. In fact, liquidated damages under the FLSA are an equitable remedy. See Reich v. Diamond D. Trailer Mfg., Inc., No. 93-4197-SAC, 1993 U.S. Dist. LEXIS 18580, at *2 (D. Kan. Dec. 22, 1993).

[3] As previously proposed by Defendants, in lieu of providing their complete tax returns, Defendants are also willing to accept sworn affidavits from Plaintiffs that state (i) whether or not they earned the EITC in each year from 2001 to 2007 and (ii) if so, how much the EITC was valued per year per Plaintiff.

[4] Household income may be impacted by many factors that are not a part of the restaurant's W-2s, including: spousal earnings, passive income limitations, qualifying dependent children, marital status and residency requirements.

[5] Specifically, Plaintiffs' maintenance of an artificially low income qualified them for other governmental benefits such as Medicaid, SSI, food stamps and housing subsidies.

The Honorable Judge Ronald L. Ellis
May 16, 2008
Page 3

specific refund which Defendants were seeking to elicit at their depositions, making documentary evidence of this information necessary.[6]

In addition, Plaintiffs argue that even if the Court orders production of the tax returns, the EITC information will not assist Defendants in their defense of this case. The *majority* of Plaintiffs' earnings came from their unreported[7] cash tips, which they earned in addition to their regular wages. Because the majority of Plaintiffs' earnings went unreported, Plaintiffs could use the artificially low salary to earn benefits, including the EITC, on their returns. As a result, the combination of unreported cash tips, wages and the EITC, as well as any additional backpay Plaintiffs may earn as a result of minimum wage and overtime violations in this action, would give Plaintiffs a windfall for their earnings from 2001 until April 2007. Thus, Plaintiffs' development of this pay practice, which they designed to take advantage of the EITC and other governmental benefits, is relevant to the *in pari delicto* defense to demonstrate Plaintiffs' wrongdoing and their lack of credibility, which has undoubtedly been called into question by the submission of letters requesting revised W-2s from as far back as 2005. See Exhibit A. Because the scope of discovery is broad, and Defendants' request is reasonably calculated to lead to the discovery of admissible information regarding the EITC, this Court should compel the production of Plaintiffs' tax returns.

In addition, Plaintiffs contend that Judge Swain has no discretion to deny liquidated damages because Defendants have already stipulated that they willfully violated the FLSA. In fact, Defendants' stipulated willfulness does not foreclose the possibility that the Court can deny liquidated damages. Under the FLSA, liquidated damages and willfulness are two distinct, separate inquiries (*i.e.*, a finding of willfulness will extend the statute of limitations period to three years, while the district court retains discretion to deny liquidated damages upon an employer's showing of good faith). See 29 U.S.C. §§ 255(a), 260; see also Fowler v. Land Mgmt. Groupe, Inc., 978 F.2d 158, 163 (1st Cir. 1992)(affirming district court's denial of liquidated damages because "good faith" apparent despite jury's "willfulness" determination); Zacholl et al. v. Fear & Fear, Inc., No. 01-Civ-1953, 2004 U.S. Dist. LEXIS 5639, at *9, fn.4 (N.D.N.Y. Apr. 5, 2004)(denying liquidated damages and stating "Defendant's willful or non-willful conduct is not critical to the Court's determination of whether to award liquidated damages."). Thus, Defendants can still gather evidence to support a good faith defense despite the stipulated willfulness, which has merely extended the statute of limitations period to three years.

---

[6] To the extent that Plaintiffs testified that they did receive refunds, Plaintiffs could have been referring to any number of refunds (*e.g.*, child credits, withholding taxes, itemized deductions, spouses' earnings, etc.), particularly because, as discussed *supra*, they all testified that they used accountants to submit their returns and did not have any knowledge of the contents of their returns.

[7] Plaintiffs' contention that defendant Jia Ling Lin's participation in the tip pool imputes tip knowledge to the restaurant's accountants is misplaced. Just because Mr. Lin may have participated in the tip pool, that does not establish that the restaurant's *accountants*, who created Plaintiffs' W-2s, ever knew any of the tip pool earnings.

The Honorable Judge Ronald L. Ellis
May 16, 2008
Page 4


In sum, because Plaintiffs' tax returns contain information that is not ascertainable through other discovery methods, and the information contained in the returns is relevant to Defendants' *in pari delicto* defense, Defendants respectfully request that this Court compel the production of Plaintiffs' tax returns.

Respectfully submitted,

Terri L. Chase

Enclosures

cc:     Joel E. Cohen, Esq. (w/encls.)
        Edward Sherwin, Esq. (w/encls.)
        Ken Kimerling, Esq. (w/encls.)

NYK 1160950-1.079795.0011

# EXHIBIT A

May 13, 2008

Me'Kong Delta, Inc.
37 Union Square West
New York, NY 10003

To Whom It May Concern:

My name is Dian Lin. I work as a delivery person in your restaurant Me'Kong Delta, Inc.
a/k/a Republic Restaurant.

I am writing to inform you that the 2005, 2006, and 2007 W2 forms you originally
provided me is incorrect and does not reflect my true earnings. Please re-send me my W2
Forms to reflect the correct income during the time I worked at Me'Kong Delta Inc.

My mailing address is:

      Attn:  Dian Lin
           123 Ludlow Street, #5
           New York, NY 10002

Sincerely,

Dian Lin



May 13, 2008

Me'Kong Delta, Inc.
37 Union Square West
New York, NY 10003

To Whom It May Concern:

My name is Jin Dong You. I work as a delivery person in your restaurant Me'Kong Delta,
Inc. a/k/a Republic Restaurant.

I am writing to inform you that the 2005, 2006, and 2007 W2 forms you originally
provided me is incorrect and does not reflect my true earnings. Please re-send me my W2
Forms to reflect the correct income during the time I worked at Me'Kong Delta Inc.

My mailing address is:

      Attn:   Jin Dong You
            98 Clinton Street, #2
            New York, NY 10002

Sincerely,

Jin Dong You



# EXHIBIT B

# COPY

1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------x

FEN Z. CHEN, JIN L. DONG, DE Q. LIAN,
DIAN LIN, GONG Y. WANG, ZHUK YONG,
JIN D. YOU and CONG D. ZHENG,

                    Plaintiffs,

          -against-                    07 CV 03307
                                       (LTS)(RLE)

REPUBLIC RESTAURANT CORP., REPUBLIC
GC, LLC, ME'KONG DELTA, INC., HUY CHI
LE, LINH HUE LE and LIANG JIN LIN,

                    Defendants.
------------------------------------x

                    February 19, 2008
                    9:42 A.M.


          Deposition of Plaintiff, by DIAN

LIN, taken by Defendants, pursuant to Notice,

at the offices of McDermott Will & Emery LLP,

340 Madison Avenue, New York, New York 10017,

before Charisse Romeo, a Shorthand Reporter

and Notary Public within and for the State of

New York.



**CLASSIC REPORTING, INC.**

**TOTAL LITIGATION SUPPORT**

ARTA PASCULLO, President

13 West 36th Street • New York, New York 10018
Tel: (212) 268-2590 • Fax: (212) 268-2596

# COPY

1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------x
FEN Z. CHEN, JIN L. DONG, DE Q. LIAN,
DIAN LIN, GONG Y. WANG, ZHUK YONG,
JIN D. YOU and CONG D. ZHENG,

                Plaintiffs,

      -against-             07 CV 03307
                           (LTS)(RLE)

REPUBLIC RESTAURANT CORP., REPUBLIC
GC, LLC, ME'KONG DELTA, INC., HUY CHI
LE, LINH HUE LE and LIANG JIN LIN,

                Defendants.
-----------------------------------x

                  February 19, 2008
                  9:42 A.M.


        Deposition of Plaintiff, by DIAN

LIN, taken by Defendants, pursuant to Notice,

at the offices of McDermott Will & Emery LLP,

340 Madison Avenue, New York, New York 10017,

before Charisse Romeo, a Shorthand Reporter

and Notary Public within and for the State of

New York.



**CLASSIC REPORTING, INC.**
TOTAL LITIGATION SUPPORT

ARTA PASCULLO, President

13 West 36th Street • New York, New York 10018
Tel: (212) 268-2590 • Fax: (212) 268-2596

6

```
 1                      D. Lin
 2          A.    No.
 3          Q.    Have you ever been a witness?
 4          A.    No.
 5          Q.    When did you come to the United
 6   States?
 7          A.    May the 2nd, 2004.
 8          Q.    Are you married?
 9          A.    Yes.
10          Q.    How long have you been married?
11          A.    Almost three years.
12          Q.    So you got married in the United
13   States?
14          A.    Yes.
15          Q.    Where do you live?
16          A.    123 Ludlow Street, Apartment 5.
17          Q.    Okay.  Is your wife Chinese as
18   well?
19          A.    Yes.
20          Q.    Do you speak any English?
21          A.    No.
22          Q.    I assume that you cannot read
23   English either; is that right?
24          A.    That's correct.
25          Q.    Does your wife speak or read
```

7

```
 1                        D. Lin

 2    English at all?

 3            A.    No.

 4            Q.    Are you able to read street

 5    signs?

 6                  MR. ROSSELLI:  Objection to form

 7            A.    I don't understand in English.

 8            Q.    You are a delivery person; isn't

 9    that right?

10            A.    That's correct.

11            Q.    Can you read the signs that

12    identify the name of the street?

13            A.    Yes.

14            Q.    Can you read traffic signs?

15            A.    No, not in English.

16            Q.    When you got married, did you

17    have to fill out forms?

18            A.    Yes.

19            Q.    Were the forms in English or were

20    they in Chinese?

21            A.    That I don't remember.

22            Q.    Do you ever have to have forms or

23    letters translated for you?

24            A.    What kind of forms?  I don't

25    understand.
```

8

```
1                    D. Lin
2          Q.    Do you file tax returns?
3          A.    Yes.
4          Q.    Are the tax returns in English or
5     in Chinese?
6          A.    Well, I ask my accountant to do
7     on my behalf.
8          Q.    Okay.  Does your accountant
9     translate things for you?
10         A.    I just gave my accountant W-2
11    form.
12         Q.    And do you ever get any letters
13    in English that you need to have translated
14    for you?
15         A.    Yes.
16         Q.    And who translates for you?
17         A.    Normally I -- I just took those
18    letters to the attorneys office.
19         Q.    When you are at work, is there
20    anybody who can translate for you?
21         A.    Yes.
22         Q.    And who is that?
23         A.    The head of delivery team.
24         Q.    And does he translate things for
25    you?
```