UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------ x
:
FEN Z. CHEN, JIN L. DONG, DE Q. LIAN, DIAN LIN, :
GONG Y. WANG, ZHU K. YONG, JIN D. YOU, and :
CONG D. ZHENG, :
:
                        Plaintiffs,   : No. 07-CV-3307 (LTS)(RLE)
:
            - against - :
:
REPUBLIC RESTAURANT CORP., REPUBLIC GC, :
LLC, ME'KONG DELTA, INC., HUY CHI LE, LINH :
HUE LE, and LIANG JIN LIN, :
:
                        Defendants. :
:
------------------------------------------------ x


**PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTIONS
TO THE COURT'S JUNE 18, 2008, ORDER**


                                          DAVIS POLK & WARDWELL
                                          450 Lexington Avenue
                                          New York, New York 10017

                                          ASIAN AMERICAN LEGAL DEFENSE
                                             AND EDUCATION FUND
                                          99 Hudson Street
                                          New York, New York 10038

                                          *Attorneys for Plaintiffs*

July 31, 2008

## TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ................................................................................................... 1

BACKGROUND .......................................................................................................................... 2

ARGUMENT ................................................................................................................................ 4

I.  Defendants' Objections to the Magistrate Judge's
    Decision Are Untimely ........................................................................................................ 4

II. Defendants Have Not Shown a Compelling Need for
    Production of Plaintiffs' Tax Returns .................................................................................. 6

    A. Defendants Have No Factual or Legal Basis
       for Asserting the *In Pari Delicto* Defense ..................................................................... 6

        1.  Even If Plaintiffs Asked To Be Paid "Off the Books,"
            Such a Fact Would Not Excuse Defendants' Failure
            To Pay Them the Minimum Wage and Overtime ................................................... 7

        2.  Under the Plain Language of FLSA, *In Pari Delicto*
            Is Not a Defense to an Award of Liquidated Damages .......................................... 7

    B. Defendants Have in Their Possession All Relevant
       Records Related to Plaintiffs' Wages ............................................................................ 11

III. Plaintiffs' Requests for Revised W-2 Forms Are Irrelevant to this
     Litigation ............................................................................................................................. 12

CONCLUSION ............................................................................................................................ 14

**PRELIMINARY STATEMENT**

Plaintiffs are eight delivery workers at Republic Restaurant ("Republic") who, for many years, until filing this action, were denied by Defendants the minimum wage and overtime compensation they were entitled to under state and federal law. Defendants have conceded liability, and there is no dispute as to how long Plaintiffs were employed by Defendants or how little they were paid per month. The only major factual issue in dispute concerns the length of Plaintiffs' shifts at the restaurant.

Nevertheless, Defendants have sought to intimidate Plaintiffs and distract the Court over the last several months by making a legally and factually irrelevant inquiry into Plaintiffs' tax returns. Simply put, Plaintiffs' tax returns have no bearing at all on the only factual issues to be decided this case, namely (1) how many hours Plaintiffs worked at Republic and (2) how much Defendants owe Plaintiffs in damages for their failure to pay the minimum wage and overtime. In objecting to Magistrate Judge Ellis's decision of June 18, 2008, Defendants have now offered at least their <u>sixth</u> different argument as to why Plaintiffs should be compelled to produce their tax returns. The Court should put an end to this pointless harassment.

There are three principal reasons why Defendants' objections should be overruled. First, their challenge to Magistrate Judge Ellis's June 18 order, which came in response to an untimely motion for reconsideration, is untimely in light of the limits imposed by Rule 72 of the Federal Rules of Civil Procedure. Second, though Defendants claim this discovery is necessary to their assertion of an <u>in pari delicto</u> defense, such a defense is not borne out by the facts they allege and, in any event, is unavailable for the purposes claimed by Defendants. Finally, while Plaintiffs, who continue to work at Republic, have asked their employers for revised W-2 forms, these requests are not connected in any way with this litigation, as Defendants try to make them out to be, and do not provide a basis for overturning Magistrate Judge Ellis's decision.

## **BACKGROUND**

On December 27, 2007, Defendants served Plaintiffs with their First Request for Production of Documents, seeking, <u>inter alia</u>, copies of Plaintiffs' federal and state tax returns and all supporting documents for the period 2001 to the present, and for later years as they became available. On January 25, 2008, Plaintiffs served their objections and responses to Defendants' document requests, specifically objecting to production of Plaintiffs' tax returns on the grounds that those documents contained confidential personal information that was not relevant to the claims or defenses in this action.

On February 7, 2008, defense counsel wrote to Plaintiffs' counsel on this matter, arguing only that Defendants are "entitled" to Plaintiffs' tax returns because, "[p]ut simply, Plaintiffs are requesting backpay in this action, and tax returns are necessary to calculate Plaintiffs' damages." (Ex. A at 3.) Defense counsel further explained that it was Defendants' position that "Plaintiffs are claiming damages for sums of money that they may have already earned in cash and were not reported for the years at issue." (<u>Id.</u>) On February 11, 2008, Plaintiffs' counsel wrote to defense counsel to explain that its argument for production of Plaintiffs' tax returns was self-refuting, because any earnings Plaintiffs did not report would not be reflected on their tax returns and, therefore, Plaintiffs' damages could not be determined from those documents. (Ex. B at 2.)

On February 20, 2008, Defendants moved to compel Plaintiffs to produce their tax returns. In this motion, Defendants abandoned their earlier argument about the relevance of the tax returns to Plaintiffs' damage calculations in favor of three new contentions, namely that the tax returns would show (1) that Defendants' volume of business had not changed over time, which Defendants claimed would prove that Plaintiffs' hours had not been reduced since the filing of the lawsuit; (2) the identities of Plaintiffs' former employers, from which it could be

determined whether Plaintiffs were aware of FLSA's overtime provisions prior to 2007; and (3) whether or not Plaintiffs could read, write, and understand English. (Ex. C at 1-2.) After a further exchange of letters, Magistrate Judge Ellis denied Defendants' motion on March 26, 2008, holding that (1) Plaintiffs' reported income bore no relationship to Defendants' volume of business; (2) discovery of Plaintiffs' tax returns to identify their former employers would be "overly broad"; and (3) Defendants did not show how Plaintiffs' tax returns would demonstrate their level of English comprehension. (Defs.' Ex. A at 4-5.)[1] Magistrate Judge Ellis also held that Defendants failed to show a "compelling need" for Plaintiffs' tax returns to prove their volume of business because Defendants had already produced their sales records for every day since January 2001. (Id. at 5.)

On April 22, 2008, nine days after Defendants' opportunity to move for reconsideration of Magistrate Judge Ellis's March 26 ruling pursuant to Local Civil Rule 6.3 had expired, Defendants moved for reconsideration of that decision. (Defs.' Ex. B at 1.) In support of this motion, Defendants offered their fifth different rationale for discovery of Plaintiffs' tax returns, namely that because Plaintiffs invoked their Fifth Amendment right against self-incrimination when asked about their tax returns during discovery, Defendants were unable to establish their in pari delicto defense. (Id.) Specifically, Defendants alleged that Plaintiffs asked Defendants to pay them a wage below the minimum wage in order to receive the federal Earned Income Tax Credit ("EITC") and, therefore, were complicit in the FLSA violations. (Id. at 1-2.)

After a further exchange of letters (Defs.' Exs. C-F), a hearing on May 8, 2008, and several follow-up letters to the Court (Defs.' Exs. G-I), Magistrate Judge Ellis denied the motion

---

[1] References to "Defs.' Ex." are to the exhibits attached to the Affidavit of Joel E. Cohen, Esq., filed with Defendants' Objections to the Court's June 18, 2008 Order.

for reconsideration on June 18, 2008, holding that Defendants' "additional arguments" did not demonstrate a compelling need for discovery. (Defs.' Ex. J at 2.) He further noted that "[t]he evidence of the use of the EITC would not tend to prove the alleged defense." (Id.)

## ARGUMENT

Having failed to convince Magistrate Judge Ellis to compel production of Plaintiffs' tax returns, Defendants now offer their sixth different argument in favor of this discovery. Specifically, Defendants contend that production of the tax returns is necessary to support an in pari delicto defense based on the premise that Plaintiffs were complicit "in asking the Restaurant to keep their official earnings low and receive the majority of their real earnings in unreported cash and cash tips so that Plaintiffs could take advantage of government benefits . . . ." (Defs.' Objections at 6.) Defendants did not make this argument to Magistrate Judge Ellis, to whom they unsuccessfully argued that Plaintiffs wished to be paid below the minimum wage, not that they wanted to be paid off the books. For the reasons articulated in Magistrate Judge Ellis's decision, as well as others set forth below, Defendants' arguments should be rejected and their objections should be overruled. Moreover, the Court should reject Defendants' objections as untimely for the reasons set forth below. Finally, that Plaintiffs, who continue to work at Republic, asked their boss for revised W-2 forms, a fact seized on by Defendants, has no bearing on any issue in this litigation and is not a basis for disclosure of Plaintiffs' tax returns.

### I. DEFENDANTS' OBJECTIONS TO THE MAGISTRATE JUDGE'S DECISION ARE UNTIMELY

Under the Federal Rules of Civil Procedure, a party objecting to a magistrate judge's order on a non-dispositive matter must serve and file such objections within ten days after being served with the magistrate judge's order. Fed. R. Civ. P. 72(a). In this case, Defendants served and filed the present objections within ten days of being served with Magistrate Judge Ellis's

4

June 18, 2008, order denying their motion for reconsideration. Nevertheless, Defendants' objections should be overruled as untimely because of their undue delay in responding to Magistrate Judge Ellis's March 26, 2008, decision denying their motion to compel, which is, in substance, the decision being objected to in this proceeding.

As noted earlier, Defendants did not move for reconsideration of Magistrate Judge Ellis's March 26, 2008, order until April 22, 2008, nineteen business days after the decision was issued, in violation of Local Civil Rule 6.3, which states that a notice of motion for reconsideration must be served "within ten (10) days after the entry of the court's determination of the original motion." Defendants have thus far failed to offer a colorable excuse for this delay. In their letter of April 28, 2008, Defendants stated that they were not aware of the alleged relevance of the EITC issue until meeting with an accountant on April 18, 2008. (Defs.' Ex. D at 2.) However, as Plaintiffs noted in their letter of April 29, 2008, that claim is untrue, since Defendant Huy Chi Le testified in his deposition on February 21, 2008—more than one month before Judge Ellis issued his decision—that Plaintiffs under-reported their income every year in order to receive a "tax refund." (Defs.' Ex. E at 2 & Tab B thereto.) Since then, Defendants have never contested that they were on notice of this tax-credit theory since at least the date of Mr. Le's deposition, nor have they stated good cause for their delay in responding to the March 26, 2008, order.

Plaintiffs concede that a timely motion for reconsideration, interposed between the original decision and the filing of objections to a magistrate judge's order, should toll Rule 72's ten-day limit for the filing of objections. However, to permit a party to file objections under the present circumstances would create a loophole that would render Rule 72's ten-day limit a nullity. In effect, Defendants seek the right to rehabilitate untimely objections by first moving for the magistrate judge's reconsideration of a decision handed down weeks or months earlier, and only

then, after being denied, filing their objections within ten days.  To condone this practice would permit parties to file objections without regard to how much time has passed since the original motion was decided, a result inconsistent with Rule 72's clear intent that such matters be decided expeditiously.  The Court should reject this dilatory tactic and overrule Defendants' objections.

## II. DEFENDANTS HAVE NOT SHOWN A COMPELLING NEED FOR PRODUCTION OF PLAINTIFFS' TAX RETURNS

As Magistrate Judge Ellis observed in his March 26 and June 18 orders, tax documents should not be subject to discovery unless "it appears they are relevant to the subject matter of the action, and that there is a compelling need therefor because the information contained therein is not otherwise readily obtainable."  Smith v. Bader, 83 F.R.D. 437, 438 (S.D.N.Y. 1979) (citing Cooper v. Hallgarten & Co., 34 F.R.D. 482, 484 (S.D.N.Y. 1964)).  Plaintiffs' tax returns, however, are not relevant to this litigation, because Defendants have failed to state a viable in pari delicto defense.  Moreover, Defendants have not shown a compelling need for this information because they already have in their possession all relevant records of Plaintiffs' wages as delivery persons at Republic.

### A. Defendants Have No Factual or Legal Basis for Asserting the *In Pari Delicto* Defense

The Supreme Court has indicated that the in pari delicto defense is available only where "as a direct result of his own actions, the plaintiff bears at least substantially equal responsibility for the violations he seeks to redress" and "preclusion of suit would not significantly interfere with the effective enforcement" of the laws giving rise to the cause of action.  Bateman Eichler, Hill Richards, Inc. v. Berner, 472 U.S. 299, 310-11 (1985).  Neither condition is met in this case, since Defendants do not allege that Plaintiffs were responsible for Defendants' failure to pay the

minimum wage and overtime compensation and application of the defense would be contrary to FLSA's language and purpose.

> 1. *Even If Plaintiffs Asked To Be Paid "Off the Books," Such a Fact Would Not Excuse Defendants' Failure To Pay Them the Minimum Wage and Overtime*

Defendants base their in pari delicto defense on the premise that Plaintiffs asked Defendants to pay them mostly "off the books" so that they could under-report their income in order to preserve their eligibility for government benefits. (Defs.' Objections at 6.) Even if that were true, Defendants have not adequately alleged the in pari delicto defense, which, as noted above, requires that the plaintiff be responsible for the unlawful conduct giving rise to his cause of action, not some other unlawful conduct. At most, Defendants have alleged that both they and Plaintiffs are guilty of tax-related offenses, but those are not the violations Plaintiffs seek to redress. Plaintiffs are suing because they were not paid the minimum wage or overtime compensation, and Defendants' allegation is irrelevant to that claim. Even if Plaintiffs asked Defendants to be paid off the books, that does not excuse Defendants' failure to pay them the wages to which they were legally entitled. Application of the in pari delicto defense on the facts alleged would lead to the absurd result that any employee who knowingly accepts wages off the books would be deemed to have forfeited his FLSA rights, a result found nowhere in decades of FLSA case law. Moreover, it would effectively strip FLSA's protections from workers (e.g., illegal immigrants, minors) who cannot be paid on the books but to whom FLSA's protections nonetheless apply.

> 2. *Under the Plain Language of FLSA, In Pari Delicto Is Not a Defense to an Award of Liquidated Damages*

Even if Defendants' theory were plausible, the in pari delicto defense is not available in FLSA actions generally or as a means of limiting FLSA liquidated damages specifically.

7

Application of this defense against plaintiffs in FLSA actions implies that, by their conduct, employees can waive their rights to the protections afforded by FLSA, including the rights to the minimum wage and overtime compensation. The Supreme Court has held, however, that because employers generally wield more power than employees in the marketplace, employees cannot waive FLSA's protections. See Tony & Susan Alamo Found. v. Sec'y of Labor, 471 U.S. 290, 302 (1985) (noting that if FLSA allowed workers to opt out of its provisions, "employers might be able to use superior bargaining power to coerce employees . . . to waive their protections under the Act"); see also Martin v. Tango's Rest., Inc., 969 F.2d 1319, 1325 (1st Cir. 1992) ("Given the policy of [the FLSA] to protect employees, more detailed findings and specific justification would be needed to support an in pari delicto defense, assuming that such a defense would ever be allowed."); Dziennik v. Sealift, Inc., No. 05–CV–4659 (DLI) (MDG), 2006 U.S. Dist. LEXIS 61860, at *21 (E.D.N.Y. Aug. 30, 2006) (rejecting the in pari delicto defense in the context of employment-related claims under maritime laws). This prohibition makes sense in light of the Second Circuit's holding that "[t]he [FLSA] statute is a remedial one, written in the broadest possible terms so that the minimum wage provisions would have the widest possible impact in the national economy." Carter v. Duchess Cmty. Coll., 735 F.2d 8, 12 (2d Cir. 1984). It would "run counter to the breadth of the statute," id., if employers could be freed from liability for wage-and-hour violations merely on the consent of workers, like Plaintiffs here, who have little or no bargaining power.

At this time, the Court need not reach the issue of whether the in pari delicto defense is barred in every aspect of FLSA litigation because Defendants have only invoked the defense in order to limit their liability for liquidated damages. (See Defs.' Objections at 1.) While the policy concerns noted above apply with equal force here, the plain and unambiguous language of

FLSA makes it clear that the <u>in pari delicto</u> defense is not available as a means of limiting liquidated damages.

The availability of liquidated damages under FLSA is governed by two sections of the law, the first of which provides that such damages "shall" be granted when an employer commits a wage-and-hour violation, and the second of which provides a limited exception to that rule. The first statute provides, in relevant part:

> Any employer who violates the provisions of section 206 or section 207 of this title [relating to the minimum wage and overtime pay, respectively] <u>shall be liable</u> to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and <u>in an additional equal amount as liquidated damages</u>.

29 U.S.C. § 216(b) (emphasis added). The second statute, providing a limited exception to this rule, provides in full:

> In any action commenced prior to or on or after May 14, 1947 to recover unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act of 1938, as amended [29 U.S.C. § 201 <u>et seq.</u>], <u>if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938</u>, as amended, the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title.

29 U.S.C. § 260 (emphasis added). In other words, a court must award liquidated damages unless the employer shows that he acted in good faith, and even if the employer makes that showing, the court still has discretion to award up to the full amount of liquidated damages at its discretion.

The case law on this point is equally clear. The Second Circuit has explained that FLSA "does not authorize the court to decline to award liquidated damages, in whole or in part, unless

9

the employer has established its good-faith, reasonable-basis defense." Brock v. Wilamowsky, 833 F.2d 11, 20 (2d Cir. 1987); see also Reich v. S. New Eng. Telecommc'ns Corp., 121 F.3d 58, 71 (2d Cir. 1997) ("[D]ouble damages are the norm, single damages the exception.") (citations and internal quotation marks omitted); Young v. Cooper Cameron Corp., No. 04 Civ. 5968 (LTS)(GWG), 2007 U.S. Dist. LEXIS 71315, at *4-5 (S.D.N.Y. Sept. 25, 2007) (holding that where a defendant "had failed to carry its heavy burden of demonstrating that its classification decision was made in good faith," the plaintiff was "entitled to judgment as a matter of law on the liquidated damages issue").

In their effort to get around the plain language of the statute, Plaintiffs cite one case, Reich v. Diamond D. Trailer Manufacturing, Inc., No. 93-4197-SAC, 1993 U.S. Dist. LEXIS 18580 (D. Kan. Dec. 22, 1993), for the proposition that "liquidated damages under the FLSA are an equitable remedy." (Defs.' Objections at 7.) In Diamond D., however, the issue was whether the plaintiff's claims for injunctive relief and liquidated damages would be tried to a judge or a jury. The parties agreed that those claims would be decided by the court, not a jury, so, in a seven-sentence opinion, the court granted the plaintiff's motion to partially strike the defendants' demand for a jury trial. Because the court had no controversy to decide, due to the absence of any actual dispute between the parties, Diamond D. represents unpersuasive authority for the proposition that a claim for liquidated damages under FLSA is equitable in nature,[2] much less that a defendant may assert equitable defenses to an award of liquidated damages. Moreover,

---

[2] The Supreme Court has consistently held that suits for money damages are legal—not equitable—in nature. See, e.g., Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 210-12 (2002); Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 47-49 (1989); Pernell v. Southall Realty, 416 U.S. 363, 370 (1974); see also Wal-Mart Stores, Inc. v. Wells, 213 F.3d 398, 401 (7th Cir. 2001) (Posner, J.) ("A claim for money due and owing under a contract is 'quintessentially an action at law.'"). FLSA liquidated damages are a species of monetary damages intended to compensate employees for the harm they have suffered, see Herman v. RSR Sec. Servs., 172 F.3d 132, 142 (2d Cir. 1999), and bear no resemblance to any of the traditional forms of equitable relief. Accordingly, FLSA liquidated damages are legal in nature.

even though a judge may have the authority to decide the issue of FLSA liquidated damages, he or she may not disregard the statute to deny liquidated damages other than where a defendant has met its burden of establishing good faith.  Defendants' failure to find any case where an employer was able to assert any equitable defense to an award of liquidated damages under FLSA is instructive.

In this case, Defendants have already stipulated that they have willfully violated FLSA by failing to pay Plaintiffs the minimum wage and overtime.  (Ex. D.)  Therefore, we expect them to be unable to carry their burden to show that they acted in good faith <u>and</u> had reasonable grounds to believe that they did not violate FLSA, because it is logically inconsistent for Defendants to admit willfully violating the statute and at the same time claim to have reasonably believed that they did not violate the statute.  Because we expect them to be unable to make the required showing, under those circumstances, the Court will not have discretion, pursuant to Section 260, to award less than the full amount of liquidated damages.  And thus, the <u>in pari delicto</u> defense is not relevant to liquidated damages, and Defendants do not have compelling need for discovery of Plaintiffs' tax returns in aid of that defense.[3]

### B. Defendants Have in Their Possession All Relevant Records Related to Plaintiffs' Wages

Defendants also lack a compelling need for the information contained in Plaintiffs' tax returns because they already have—and indeed, have produced to Plaintiffs—complete records of wages paid to Plaintiffs.  These records, which Plaintiffs do not dispute, demonstrate how

---

[3] The relevant state law also provides that the court "shall" award liquidated damages, though only "upon a finding that the employer's failure to pay the wage required by this article was willful."  N.Y. Labor Law § 198(1-a).  Because Defendants have stipulated that their failure to pay the minimum wage or overtime was willful, an award of liquidated damages is mandatory under unambiguous language of the statute.  <u>See</u> <u>Moon v. Kwon</u>, 248 F. Supp. 2d 201, 235 (S.D.N.Y. 2002) ("[T]he standard for willfulness for purposes of the FLSA statute of limitations does not appreciably differ from the standard applicable under New York law when determining whether to award liquidated damages . . . .").

much Defendants paid Plaintiffs in wages, and upon making a finding as to the hours worked by Plaintiffs, the Court and the parties can easily compute Plaintiffs' damages on the basis of these records. The amounts earned by Plaintiffs from tips is not relevant to these calculations because they do not affect the wages that Defendants were legally obligated to pay Plaintiffs.[4]

### III. PLAINTIFFS' REQUESTS FOR REVISED W-2 FORMS ARE IRRELEVANT TO THIS LITIGATION

Defendants have not explained how Plaintiffs' recent request that their employer provide revised W-2 forms is relevant to this litigation. Plaintiffs all file taxes and continue to work at Republic. The fact that they would want to make sure their tax filings were correct is as unremarkable as it is irrelevant.

Defendants suggest that "Plaintiffs themselves have put their reported wages at issue by requesting these revised W-2s . . . ." (Defs.' Objections at 8.) This statement is false because Plaintiffs' requests for revised W-2 forms were unrelated to this litigation. The requests were made directly from each employee to his employer in the context of an ongoing employment relationship, without the involvement of lawyers or the courts. It should not be controversial to suggest that Plaintiffs and Defendants may continue to carry on business without converting each interaction into a subject for litigation.

---

[4] By way of background, FLSA allows an employer to pay an employee who earns $30 or more per month in tips a lower minimum wage than that earned by non-tipped employees, as long as the employee's wages and tips add up to at least the ordinary minimum wage. 29 U.S.C. §§ 203(m), (t). In order to be eligible to take this "tip credit," an employer must inform the employee of the provisions of section 203(m) and the employee must be allowed to keep all tips received (though tip pools are allowed). Id. § 203(m).

In this case, Plaintiffs would stipulate that they received more than $30 per month in tips and that the sum of their tips and the lower minimum wage for tipped employees would at least equal the ordinary minimum wage. The only tip-related issue to be decided in this litigation is whether Defendants ever gave Plaintiffs the statutorily required notice of the tip credit provision; if they did, then the lower minimum wage for tipped employees would apply to Plaintiffs' claims, and if they did not, then the ordinary minimum wage would apply. Because either calculation can be made without reference to Plaintiffs' tip income, the question of how much Plaintiffs earned in tips is not relevant.

Furthermore, Defendants contend that "the timing of Plaintiffs' requests for revised W-2s suggest that after Plaintiffs learned of Judge Ellis' inclination to require production of their tax returns, they sought to protect themselves in the event that they had to produce their tax returns by requesting revised W-2s so that they could explain why the reported numbers on their tax returns were lower than expected." Id. Defendants' speculation into Plaintiffs' thought processes hardly suggests a "compelling need" for production of Plaintiffs' tax returns.

Defendants also suggest that Plaintiffs' request "placed their credibility into question." Id. at 4. Whether or not that is true, it does not provide a basis for requiring production of Plaintiffs' tax returns. By Defendants' logic, their concession that they paid wages off the books, in clear violation of their legal obligations, would provide a basis for requiring production of Defendants' tax returns.

Finally, evidence that Plaintiffs amended their tax returns should be excluded from this action for the reasons underlying Rule 407 of the Federal Rules of Evidence, which prohibits a plaintiff from introducing evidence that a defendant undertook some remedial measures after a harm occurred in order to prove the defendant's liability for that harm. See Fed. R. Evid. 407. Rule 407 rests on a sensible social policy that encourages people to take steps to mitigate errors and fix mistakes without fear that such actions will be thrown back in their faces. See, e.g., World Boxing Council v. Cosell, 715 F. Supp. 1259, 1267 (S.D.N.Y. 1989). In the same vein, by asking for revised W-2 forms, Plaintiffs have sought to make sure that they have paid the correct amount of income tax. Plaintiffs should not be penalized for taking this action, and Defendants should not be allowed to use it to further harass Plaintiffs and to distract the Court from the issues relevant to the present matter.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs request that the Court overrule Defendants' objections and affirm Magistrate Judge Ellis's March 26 and June 18, 2008, orders.

Dated: New York, New York
July 31, 2008

>                          DAVIS POLK & WARDWELL
>
> By:      /s/ Edward Sherwin
>          Jonathan L. Adler (JA-7424)
>          Matteo J. Rosselli (MR-6422)
>          Edward Sherwin (ES-3072)
>          William R. Miller (WM-9975)
>          450 Lexington Avenue
>          New York, NY 10017
>          (212) 450-4000
>
>          Kenneth Kimerling (KK-5762)
>          Asian American Legal Defense
>             and Education Fund
>          99 Hudson Street
>          New York, New York 10038
>          (212) 966-5932
>
>          *Attorneys for Plaintiffs*